IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FRANK KEITH GOODMAN | * | |
| Petitioner, | * | Civil Action No. RDB-12-2972 |
| v. | * | Criminal Action No. RDB-08-0056 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

The *pro se* Petitioner Frank Keith Goodman ("Petitioner" or "Goodman") has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 415). Petitioner claims ineffective assistance of counsel in violation of his Sixth Amendment right. *Id.* Petitioner has also filed a Motion to Amend (ECF No. 433) his Motion to Vacate, in light of the United States Supreme Court's intervening decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and a Motion for Appointment of Counsel (ECF No. 428).

Having reviewed the motions, the Government's response (ECF No. 426), and Petitioner's objections to the Government's response (ECF No. 427), this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, Petitioner's Motion to Amend (ECF No. 433) is GRANTED. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 415) is DENIED, and Petitioner's Motion for Appointment of Counsel (ECF No. 428) is also DENIED.

## BACKGROUND

Patrick Albert Byers, Jr. ("Byers") and Frank Keith Goodman ("Petitioner" or "Goodman") were convicted on charges arising from a 2007 conspiracy and murder of Carl Lackl ("Lackl"), a witness scheduled to testify against Byers in the Circuit Court for Baltimore City. *United States v. Byers*, 649 F.3d 197, 200 (4th Cir. 2011). Evidence introduced at their trial established the following chronology:

On March 4, 2006, Byers shot and killed a man named Larry Haynes near North Montford Avenue in Baltimore. *Id.* at 201. Lackl ultimately admitted to being in the area to purchase narcotics near the scene of the crime. He observed Byers fleeing, and ultimately contacted police. *Id.* at 202. Lackl later identified Byers' face in a photo array, and Baltimore Police arrested Byers soon thereafter. *Id.* at 203. Lackl was the only eyewitness scheduled to testify at Byers' July 10, 2007 state murder trial. *Id.*

On July 2, 2007, Lackl received a phone call from a man purportedly interested in purchasing a car that Lackl had listed for sale. *Id.* The man indicated that he was in the neighborhood and would stop by Lackl's home to inspect the vehicle. *Id.* While Lackl waited in front of his home, a car stopped nearby and someone[1] in the passenger seat shot and killed Lackl. *Id.*

Police traced the call Lackl received shortly before his death to a phone owned by Marcus Pearson ("Pearson"), a member of the "Bloods" street gang. *Id.* Pearson cooperated with police, informing them that Goodman had offered Pearson $2,500 on behalf of Byers to eliminate Lackl as a witness in Byers' trial. *Id.* Pearson had agreed to

---

[1] The shooter was later identified as Ryan Cornish, a member of the "Bloods" street gang.

"take care of it" and called Byers on a contraband cell phone in prison to verify the $2,500 offer. *Id.* Pearson then recruited Jonathan Cornish to be the shooter. *Id.* Cornish was a young member of the Bloods and was ordered to perform the murder for free. *Id.* Pearson supplied Cornish with a handgun and directed Cornish and Randle, another member of the Bloods, to Lackl's home. *Id.* Moments after the murder, Cornish called Pearson to report that Lackl was dead, and Pearson called Goodman to collect the money. *Id.* At a meeting in his car, Goodman paid Pearson $2,200, $300 less than the amount promised. *Id.* Pearson then paid the shooters $100 each out of his $2,200 reward. *Id.*

Petitioner and Byers were charged on seven counts.[2] In Count One, they were charged with using interstate commerce in a conspiracy to murder Lackl as consideration for something of pecuniary value in violation of 18 U.S.C. § 1958(a). Superseding Indictment, ECF No. 95. Count Two charged them with a substantive count of murder-for-hire, in violation of Section 1958(a). *Id.* In Count Three, Petitioner and Byers were charged with conspiring to obstruct Lackl's communications with federal officials regarding a federal offense committed by Byers in violation of 18 U.S.C. §§ 1512 (a)(1)(C), (3)(A), and (k).[3] In Count Four, they were charged with a substantive count of obstruction of justice in violation of Sections 1512(a)(1)(C) and (3)(A). *Id.* Counts Five, Six, and Seven charged them with violations of 18 U.S.C. §§ 924(c)(1)(A)(iii), (j), and (o) for the use of a

---

[2] Byers was charged individually on two additional counts.
[3] The federal offense to which the Indictment referred was Byers' charge of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). *Id.*

firearm during and in relation to a crime of violence. *Id.* Following a six-week jury trial, a jury convicted them on all seven counts on April 17, 2009. *See* Verdict Sheet, ECF No. 316.[4]

Relevant to Petitioner's Motion, this Court instructed the jury that a Section 1512 conviction (charged in Count Three) required a finding that "the defendant acted knowingly and with specific intent to prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense." Jury Instruction No. 54. The jury was further instructed that "it [was] not necessary for the Government to prove that the defendant knew he was breaking any particular criminal law," nor "that the judge [was] a United States judge or that the law enforcement officer [was] a federal law enforcement officer." *Id.* Finally, the jury was instructed that "[t]he law does not require that a federal proceeding be pending at the time or even that it was about to be initiated when the attempted action, threat, intimidation, or corrupt persuasion was made," or that the threatened person "be involved in an ongoing federal investigation or in an investigation of a federal crime." Jury Instruction No. 55.

Goodman was sentenced on July 17, 2009 and received concurrent life sentences as to Counts One and Two. J., p. 2, ECF No. 357. Concurrent life sentences, consecutive to Counts One and Two, were imposed for Counts Three and Four. *Id.* As to Count Five, a ten-year sentence consecutive to Counts One through Four was imposed. *Id.* For Count Six, a sentence of twenty five years, consecutive to Counts One through Five was imposed. *Id.* A twenty-year sentence, concurrent to Counts One and Two, was imposed for Count Seven. *Id.*

---

[4] The Government sought the death penalty as to Byers.

On July 22, 2009, Petitioner's attorney filed a notice of appeal (ECF No. 359).  The United States Court of Appeals for the Fourth Circuit affirmed Petitioner's convictions on May 6, 2011.  *See Byers*, 649 F.3d at 197.  Petitioner's attorney then filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on October 17, 2011. *Goodman v. United States*, 132 S.Ct. 468 (2011).

At the time of Goodman's March 2009 trial, the Fourth Circuit's opinion in *United States v. Harris*, 498 F.3d 278, 286 (4th Cir. 2007) *abrogated by Fowler v. United States*, 131 S. Ct. 2045 (2011), defined the "federal nexus" required for Section 1512 convictions.  Section 1512 prohibits obstruction of an individual's communications with federal officials regarding a federal offense.  The *Harris* court determined that "[s]o long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established." *Id.*

*Harris* was later abrogated by the Supreme Court's decision in *Fowler v. United States*, 131 S. Ct. 2045 (2011).  The Supreme Court decided *Fowler* on May 26, 2011, twenty days after the Fourth Circuit's judgment in Petitioner's case.  In *Fowler*, the Supreme Court determined that the appropriate standard for assessing whether the Government has established the federal nexus is whether it has shown "a reasonable likelihood that had, e.g., the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Id.* at 2052. "[T]he likelihood of communication to a federal officer" must have been "more than remote, outlandish, or simply hypothetical." *Id.*  However, "the government need not show

that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Id.*

Petitioner has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 415).  Petitioner claims ineffective assistance of counsel, citing his attorney's failure to do the following: (1) contest Petitioner's Section 1512 conviction under the Supreme Court's intervening decision in *United States v. Fowler*; (2) object to the lack of evidence supporting the "pecuniary element" of Petitioner's Section 1958 conviction;[5] (3) object to Government counsel's allegedly improper remarks during closing arguments; and (4) reasonably advise Petitioner as to an available plea offer.  Petitioner has also filed a Motion to Amend (ECF No. 433) his Motion to Vacate, in light of the United States Supreme Court's decision in *Alleyne v. United States*, and a Motion for Appointment of Counsel (ECF No. 428).

## STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  In order to establish a claim for ineffective assistance of counsel, Petitioner must prove both elements of the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).  First, Petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688.  In assessing whether counsel's performance was unconstitutionally deficient, courts

---

[5] As recited earlier, 18 U.S.C. § 1958 prohibits the use of interstate commerce with the intent that a murder be committed "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value."

adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689.   Second, Petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687.   In order to establish this level of prejudice, Petitioner must demonstrate a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   Establishing one of the two *Strickland* prongs is insufficient; rather, Petitioner must satisfy both prongs to qualify for relief. *See id.* at 687.

## ANALYSIS

### I. *Fowler v. United States*

A. Counsel's Failure to Anticipate *Fowler* Does Not Constitute Ineffective Assistance

Petitioner argues that his attorney's failure to raise the Supreme Court's intervening decision in *United States v. Fowler* on direct appeal to the Fourth Circuit or in his petition for a writ of certiorari to the Supreme Court constitutes ineffective assistance of counsel. Petitioner claims that *Fowler* applies retroactively, that the jury instructions used at his trial violate *Fowler*, and that he would have been entitled to relief had his attorney raised the issue. Mem. Supp. Mot. Vacate, p. 5-6, ECF No. 415-1.

Under the highly deferential first prong of *Strickland*, "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996); *accord Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983).   Indeed, this Court has previously found that counsel was not ineffective for failing to object to a new rule of law decided after

the judgment was issued in the defendant's direct appeal.  *Gilchrist v. United States*, No:
DKC08-1218, 2012 WL 4520469, at *24 (D. Md. Sept. 27, 2012).

      Here, as in *Gilchrist*, *Fowler* was decided after the Fourth Circuit issued its opinion on
Petitioner's appeal on May 6, 2011.  *See* 649 F.3d at 197.  Also, *Fowler* was decided past the
fourteen-day deadline for filing a petition for rehearing or rehearing en banc, which fell on
May 20, 2011.  *See* Fed. R. App. P. 35, 40.  Furthermore, the Supreme Court has traditionally,
with very rare exceptions, refused to consider claims not raised in lower proceedings. *Yee v.
City of Escondido,* 503 U.S. 519, 533 (1992); *c.f. Berkemer v. McCarty* 468 U.S. 420, 443 (1984)
(recognizing that the Supreme Court has jurisdiction to consider an issue not raised below,
although it is generally reluctant to do so).

      Because *Fowler* was decided after the Fourth Circuit issued its judgment and after the
fourteen-day filing deadline for a petition for rehearing, Petitioner's counsel did not err by
failing to raise claims under *Fowler* on direct appeal.  Furthermore, given that the Supreme
Court rarely considers issues not raised below, counsel's decision not to brief *Fowler* claims
on petition for a writ of certiorari was well within the range of reasonable attorney conduct
noted in *Strickland*.  Therefore, Petitioner's counsel did not err by failing to challenge the pre-
*Fowler* jury instructions for the Section 1512 violations charged in Counts Three and Four.

      B. The Pre-*Fowler* Jury Instructions Constitute Harmless Error

      Section 2255 motions may seek retroactive relief based on an asserted right that was
subsequently recognized by the Supreme Court if that right has been newly recognized by
the Supreme Court and made retroactively applicable to cases on collateral review.  28 U.S.C.
§ 2255(f)(3); *see United States v. Powell*, 691 F.3d 554, 556 (4th Cir. 2012).  While there is a

strong presumption against retroactivity, *Teague v. Lane*, 489 U.S. 288, 309-10 (1989), and its progeny have identified two exceptional cases in which new legal rules ought to be applied retroactively. First, courts have upheld retroactive application of new substantive rules. *See Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). A new substantive rule narrows the scope of a criminal statute, placing certain conduct or persons covered by the statute beyond the state's power to punish. *See id.* A narrow exception to the presumption against retroactivity also applies to "watershed" procedural rules that implicate "fundamental fairness and accuracy of . . . criminal proceeding[s]." *Saffle v. Parks*, 494 U.S. 484, 495 (1990).

While the Supreme Court did not decide in its *Fowler* opinion whether *Fowler* would apply retroactively, the United States Court of Appeals for the Fourth Circuit has held that *Fowler* does apply retroactively to cases on collateral review. *United States v. Smith*, 723 F.3d 510, 515 (4th Cir. 2013) ("[W]e agree that the *Fowler* right has been 'newly recognized' by the Supreme Court and that it is retroactively applicable to cases on collateral review."). Petitioner, while not raising the issue explicitly, essentially contends that a jury instruction based on the *Fowler* case would have changed the outcome of his trial.

In *Smith*, the Fourth Circuit further held that pre-*Fowler* jury instructions, "relat[ing] only to the federal nexus for witness tampering, did not taint the trial 'from beginning to end,' nor did [they] undermine 'the framework within which the trial proceed[ed],'" and therefore did not constitute structural error subject to automatic reversal. *Smith*, 723 F.3d at 515, quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). Rather, the Court continued, any error in jury instructions with respect to an element of the witness tampering offense is properly subject to harmless error analysis. *Id.* Adopting the Supreme Court's test

9

for Section 2254 cases in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Court announced that the proper harmless error review standard for Section 2255 cases is "whether the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 517. Consequently, this Court will assess Petitioner's claim under that standard.

The *Fowler* "reasonable likelihood" standard "requires that the [G]overnment establish the federal nexus by presenting evidence showing that a communication with a federal officer was more than a possibility but less than a probability, so long as the chance of the communication was not remote, outlandish, or simply hypothetical." *Smith*, 723 F.3d at 518. In *Smith*, the Court found that the pre-*Fowler* jury instructions were harmless error because the "evidence satisfying the 'reasonable likelihood' standard was substantial." *Id.* Smith's victim had been "complaining about large scale gang activity in her neighborhood." *Id.* While drug trafficking alone might not be enough to satisfy the "reasonable likelihood" standard, the Court noted, "the federal nature of drug trafficking plus 'additional appropriate evidence' does meet the standard." *Id.* (quoting *United States v. Bell*, 113 F.3d 1345, 1349 (3d Cir. 1997)). The Court found that the Government had put forth "additional appropriate evidence." *Id.* In *Smith*, a DEA agent testified that the DEA's "biggest source of information" was the Baltimore City Police Department and that the DEA worked closely with the Department in six of nine task forces. *Id.* Furthermore, the agent testified that "even street level drug cases come to the attention of the DEA," and the case involved gang activity, elevating the profile of the drug trafficking. *Id.*

Just as in the *Smith* case, the evidence in this case against Byers and Goodman was substantial and satisfied the "reasonable likelihood" standard set forth in the *Fowler* case.

10

The evidence at trial indicated possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).  Furthermore, the evidence at trial indicated prior acts of obstruction of justice, firearm violations, and drug trafficking.  As the Supreme Court noted in the *Fowler* case, the Government must merely establish the "likelihood of communication to a federal officer," which must have been "more than remote." *Fowler*, 131 S. Ct. at 2052.

As in the *Smith* case, the evidence in this case involved extensive drug activity, the type of which is addressed jointly by the Drug Enforcement Administration with the Baltimore City Police Department.  Accordingly, the pre-*Fowler* jury instructions in this case were harmless error just as they were in the *Smith* case.  As the Fourth Circuit recognized in *Smith*, the pre-*Fowler* jury instructions did not have a substantial and injurious effect or influence in determining the jury's verdict.  Consequently, these instructions constitute harmless error.

## II. The Government Proved the Pecuniary Element of the Section 1958 Charge

Petitioner's second argument for relief relates to his charge under 18 U.S.C. § 1958, which prohibits murder committed as consideration for something of pecuniary value. Petitioner argues that the Government failed to prove that anything of value was promised or given to Cornish for the murder of Lackl.  He maintains that his counsel's failure to object to that alleged lack of evidence constituted ineffective assistance.  Petitioner understands the "pecuniary element" of his Section 1958 charge as requiring that something of value be transferred to the "hitman" as a quid pro quo for the murder.  Mem. Supp. Mot. Vacate, p. 7, ECF No. 415-1.  While the Government presented evidence that Goodman

paid Pearson for the murder, Petitioner contends that the quid pro quo payment was not established. *Id.*

Several Circuits have interpreted the "as consideration for" language in 18 U.S.C. § 1958 as requiring that a direct "quid pro quo" payment be made by the solicitor to the murderer. *See, e.g., United States v. Chong*, 419 F.3d 1076, 1082 (9th Cir. 2005); *United States v. Richeson*, 338 F.3d 653, 657 (7th Cir. 2003). However, other Circuits have held that an exchange of currency between two members of a single conspiracy is sufficient. *See, e.g., United States v. Hyles*, 521 F.3d 946, 954-55 (8th Cir. 2008). The United States Court of Appeals for the Fourth Circuit has not decided whether Section 1958 requires a direct quid pro quo payment.[6]

Because the Fourth Circuit has not addressed the issue, counsel's failure to object to the absence of a direct quid pro quo payment in the Government's case falls within the realm of reasonable attorney conduct under *Strickland.* Furthermore, the jury had ample evidence to convict Goodman. After agreeing to cooperate with investigators, Pearson revealed that Goodman had offered Pearson $2,500 to kill Lackl for Byers. Pearson agreed to "take care of it," and called a contraband cell phone that Byers had in jail to verify the $2,500 offer. According to Pearson, Goodman then gave him Lackl's home address and phone number. Documents seized in Byers' jail cell contained the same address. Goodman told Pearson that Lackl was selling a used Cadillac. After speaking with Byers and Goodman, Pearson recruited Jonathan Cornish to be his triggerman. As a young member of

---

[6] While the Fourth Circuit addressed the Section 1958 pecuniary element in *United States v. Tinsley*, the shooters were directly compensated by their solicitor in *Tinsley.* Thus, the Fourth Circuit did not rule on whether a direct quid pro quo is always necessary. *See United States v. Tinsley*, 166 F.3d 336 (4th Cir. 1998).

the Bloods, Cornish was ordered to perform the murder for free for Pearson. Pearson supplied Cornish with a handgun, and directed Cornish to follow him in a car. On the way, Pearson called Lackl to tell him that he was interested in looking at the Cadillac and that Lackl should wait for him outside. Cornish drove past Lackl's house once, then returned and came to a stop where Lackl was waiting. Lackl approached the car's front passenger window, at which time Cornish shot him three times. Moments later, Cornish called Pearson to report that the job was complete, and Pearson called Byers to report that Lackl was dead. Soon thereafter, Pearson contacted Goodman's cell phone in order to set up a time and place to collect the Lackl bounty. Pearson met with Goodman, collected $2,200 ($300 less than was promised), and paid Cornish and Randle $100 each. In light of this evidence, Petitioner's second claim for ineffective assistance of counsel fails.

## III. <u>The Government's Statements Were Not Improper</u>

Petitioner also argues that his attorney's failure to object to the Government's allegedly improper comments during closing argument and rebuttal constitutes ineffective assistance of counsel. First, Petitioner claims that the Government improperly bolstered Marcus Pearson's trial testimony by highlighting the consistency of his statements following appointment of counsel. Mem. Supp. Mot. Vacate, p. 10, ECF No. 415-1. Second, Petitioner claims that the Government incorrectly explained the terms of Pearson's Rule 11 (c)(1)(C) plea agreement by suggesting that the Court had discretion to either accept or reject it. *See id.* at 13.

The test for reversible prosecutorial misconduct has two prongs. A defendant must show (1) that the prosecutor's remarks were improper and (2) that they "prejudicially

affected [his] substantial rights so as to deprive the defendant of a fair trial." *United States v. Adam*, 70 F.3d 776, 780 (4th Cir. 1995). It is error for the Government to bolster or "vouch" for a Government witness. *See United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993). The Government may not make "explicit personal assurances that a witness is trustworthy or implicitly bolster the witness by indicating that information not presented to the jury supports the witness's testimony." *Id.* In *United States v. Nwankwo*, 2 F. Supp. 2d 765, 769 (D. Md. 1998), for example, this Court held that the failure to object to the Government's closing remarks did not constitute ineffective assistance of counsel because the remarks did not express a "personal belief" in the credibility of a Government witness or imply that information not presented to the jury supported the witness's testimony. *Id.* Instead, the Government argued that a plea agreement gave the witness a strong motivation to tell the truth, an argument that this Court found to be permissible. *Id.*

The jury in Petitioner's trial was instructed that whether a witness has made prior inconsistent statements, and why he made them, may be factors to consider in assessing witness credibility. *See* Jury Instruction No. 22. Given that Pearson had made numerous inconsistent statements,[7] bringing the issue of his credibility to the forefront, it was appropriate for the Government to point out to the jury that Pearson was consistent after a certain point. Unlike in *Lewis*, the Government's statements did not constitute vouching because they contained no explicit assurances of trustworthiness. *See* Tr. 527-28, April 15,

---

[7] In closing argument, the Government admitted that Pearson, a key witness in the Government's case, had made several pre-trial statements inconsistent with his trial testimony. Pretrial, Pearson claimed that Cornish communicated directly with Byers, then that he had driven Cornish to the scene, but had no further involvement with the conspiracy. Later, Pearson confirmed the facts as they are stated in this Memorandum Opinion. *See* Tr. 526-27, April 15, 2009, ECF No. 389.

2009, ECF No. 389. Rather, as in *Nwankwo*, counsel identified a point after which Pearson's statements became consistent to suggest that they were more credible after that point.

With regard to Petitioner's second claim, he is incorrect that the Government misrepresented the terms of Pearson's plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. While bound parties cannot deviate from such an agreement, a court is only bound once it accepts the plea agreement. *See* Fed. R. Crim. P. 11(c)(1)(C) ("[A] recommendation or request [that a specific sentence is the appropriate disposition] binds the court once the court accepts the plea agreement."). In Pearson's case, the plea agreement specifically indicated that the Court was not a party to the agreement, was not bound to accept its terms, and was under no obligation to ultimately follow the Government's recommendation.[8] Pearson Plea Agreement ¶ 17. Therefore, counsel's failure to object to the Government's statements in closing argument did not constitute error, and Petitioner's third argument for ineffective assistance of counsel fails.

## IV. The Government Did Not Make a Formal Plea Offer

Petitioner argues that his attorney's failure to inform him of the Government's alleged pre-trial plea offer constitutes ineffective assistance of counsel. Petitioner claims to have "[s]ubsequent to trial . . . learned that a plea had been extended." Mot. Vacate., p. D-1, ECF No. 415. He asserts that he was never advised of the offer and would have accepted it "in order to avoid a life sentence." *Id.*

The Sixth Amendment right to counsel applies during plea bargaining, and ineffective assistance of counsel claims in the plea bargaining context are governed by the two-part

---

[8] In fact, the Court could have permitted Pearson to withdraw his guilty plea.

15

*Strickland* test.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  The Supreme Court recently held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).  In order to demonstrate prejudice under *Strickland*, a Petitioner must still show that a plea would have resulted in a lesser charge or sentence.  *See id.* at 1409.

This Court has held that an ineffective assistance of counsel claim cannot prevail where the record indicates that a formal plea offer was never made.  *Gilchrist*, 2012 WL 4520469, at *19.  In order to establish the deficient performance prong of *Strickland*, a petitioner must begin by proving that a formal offer was made.  *See id.*  For example, the Petitioner in *Gilchrist* failed to demonstrate that a formal offer was made because the only evidence he provided was a letter indicating his counsel's belief that there was no "plea agreement . . . in writing," while both his attorney and the Government—the parties necessarily privy to an offer—denied that an offer existed.  *See id.*

As in *Gilchrist*, Petitioner offers only his personal testimony to support the existence of a plea offer.  The Government denies that an offer ever existed[9] and, unlike in *Gilchrist*, Petitioner has no written documentation of an offer.  In contrast, the Government offers an e-mail dating back to January 29, 2009, in which Petitioner's counsel stated that "cooperation is not doable" and that "there is no non coop offer."  Based on this evidence, it is clear that the Petitioner was not offered a plea agreement.  Moreover, even if Petitioner could prove that a plea agreement existed, Petitioner does not suggest that the terms of that alleged

---

[9] *See* Resp. to Mot. to Vacate, p. 34 (ECF No. 426).

16

agreement were more favorable than his present sentence, as required under *Strickland*. Consequently, Petitioner's claim for ineffective assistance of counsel fails.

## V. *Alleyne v. United States*

On July 1, 2013, Petitioner submitted a Motion to Amend (ECF No. 433) his Motion to Vacate.[10]   He seeks to add a claim under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), an intervening opinion issued by the United States Supreme Court.   Petitioner alleges that "the jury verdict [in his case] authorizes a mandatory minimum of 5 years [counts 5 & 7] imprisonment. . . . However, the Court relying on *Harris* made extra judicial factual findings to the detriment of the Sixth and Fifth Amendment."   Mot. to Am., p. 6, ECF No. 433.

### A.   This Court will Consider Petitioner's *Alleyne* Argument

Where a petitioner proceeds without the aid of counsel, his pleadings are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."   *Erickson*, 551 U.S. at 94.   In this case, the Government filed its Response to Petitioner's Motion to Vacate on February 19, 2013.   Resp. to Mot. to Vacate, ECF No. 426. Therefore, Petitioner's Motion to Amend, submitted on July 1, 2013, was untimely. However, given that Petitioner is proceeding *pro se* and that he is raising an argument under an intervening decision of the United States Supreme Court, this Court will consider his claim.   Indeed, 28 U.S.C. § 2255 grants Petitioners a period of one year from the date of decision to assert rights newly recognized by the United States Supreme Court.   28 U.S.C. § 2255(f)(3).

---

[10] Petitioner's Motion to Vacate (ECF No. 433) was filed on July 5, 2013.

B.   Petitioner is Not Entitled to Relief Under *Alleyne*

In his Motion to Amend, Petitioner correctly notes that there has been a subsequent change in the law with respect to judicial fact-finding during sentencing.  In *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the Supreme Court overruled *Harris*, holding that any fact that increases the mandatory minimum sentence of a crime is an element of the crime and not a sentencing factor.  *Id.* at 2163–64.  The Supreme Court's decision in *Alleyne*, however, does not apply to cases on collateral review and is not retroactive in nature.  *See United States v. Stewart*, 540 Fed. App'x 171, 172 (4th Cir. 2013); *see also United States v. Reyes*, 755 F.3d 210, 211 (3d Cir. 2014) cert. denied, 135 S.Ct. 695 (2014) (holding that Alleyne does not apply retroactively to cases on collateral review); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (declining to apply Alleyne retroactively to permit a petitioner to file a second collateral attack).  Therefore, Petitioner's argument for relief under *Alleyne* must fail.

Even if *Alleyne* did apply retroactively to cases on collateral review, Petitioner's claim would still fail.  Count Five, using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), was the only charge brought against Goodman that carried a mandatory minimum sentence.  Superseding Indictment, p. 12, ECF No. 95.  The mandatory minimum sentence is five years, seven years if the firearm was "brandished," and ten years if the firearm was "discharged."  18 U.S.C. § 924(c)(1)(A)(i)-(iii).  With respect to Count Five, this court sentenced Goodman to the mandatory minimum sentence of ten years imprisonment.  While the jury in Petitioner's case did not explicitly determine that the gun used to kill Lackl was "discharged," the jury did find beyond a reasonable doubt that Petitioner committed the "murder-for-hire of Carl Lackl," that Lackl "died as a direct result

18

of [Petitioner's actions]," and that Goodman "cause[d] the death" of Lackl.  *See* Verdict Sheet, p. 1, ECF No. 316; Special Verdict Form, p. 3, 5. Furthermore, at sentencing, this Court properly considered the nature of the offense and other relevant factors under 18 U.S.C. § 3553(a) and imposed a sentence within the limits permitted by Section 924(c).  A ten year consecutive sentence was imposed on Count Five to run consecutive to Counts One through Four.  A twenty-five year consecutive sentence was imposed on Count Six consecutive to Counts One through Five.  The ten year consecutive sentence as to Count Five had no ultimate effect upon the total sentence imposed upon Petitioner.  Therefore, Petitioner's final argument fails as to any application of *Alleyne* and any alleged prejudice in the ultimate sentence imposed upon Petitioner.  His Motion to Vacate is DENIED.

## VI. <u>Petitioner Does Not Require Appointed Counsel</u>

Petitioner asks that counsel be appointed to represent him in connection with his Section 2255 motion.  He cites the factual and legal complexity of his claims and his "inability to investigate and present claims."  Mot. Appoint Counsel, ECF No. 428. In ruling upon Petitioner's motion for appointed counsel, it is within the discretion of this Court to appoint counsel if it is "in the interests of justice."  However, the Supreme Court has held that a habeas petitioner has no constitutional right to the assistance of counsel.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today."  (citing *Johnson v. Avery*, 393 U.S. 483, 488 (1969))).

In this case, Petitioner states that he requires a court-appointed attorney because his limited education has not prepared him to argue the legal and factual complexity of his

claims. This Court declines to grant a court-appointed attorney on such grounds, where Petitioner has adequately expressed his grounds for relief without the assistance of counsel and no evidentiary hearing is required. Additionally, Petitioner has previously been represented by a court-appointed counsel at trial and on direct appeal. Under these circumstances, the interests of justice do not require the appointment of counsel. Accordingly, Petitioner's Motion for Appointment of Counsel (ECF No. 428) is DENIED.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Amend (ECF No. 433) his Motion to Vacate is GRANTED. His Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 415) is DENIED and Motion to Appoint Counsel pursuant to 18 U.S.C. § 3006A (a)(2)(B) (ECF No. 428) is also DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, a court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from a court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a court denies Petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S.

322, 336-38 (2003).  Because reasonable jurists would not find Petitioner's claim debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated:        September 28, 2015

_____/s/_____
Richard D. Bennett
United States District Judge